1   BERNSTEIN LITOWITZ BERGER
2       & GROSSMANN LLP
    Blair A. Nicholas   (Bar No. 178428)
3   12481 High Bluff Drive, Suite 300
    San Diego, CA 92130
4   Tel:   (858) 793-0070
    Fax:   (858) 793-0323

5
6   *Counsel to Vinayak R. Pai Defined*
    *Benefits Pension Plan and Proposed*
7   *Lead Counsel to the Class*

8
9
10                  UNITED STATES DISTRICT COURT

11               NORTHERN DISTRICT OF CALIFORNIA

12                      SAN FRANCISCO DIVISION

13   VINAYAK R. PAI DEFINED BENEFITS         Case No.
     PENSION PLAN, on Behalf of Itself and all
14   Others Similarly Situated,

15                         Plaintiff,

16         v.                                   **PLAINTIFF DEMANDS
                                                TRIAL BY JURY**
17   THE CHARLES SCHWAB CORPORATION,
     CHARLES SCHWAB & CO. INC.,
18   CHARLES SCHWAB INVESTMENT
     MANAGEMENT, INC., SCHWAB
19   INVESTMENTS, CHARLES R. SCHWAB,
     EVELYN DILSAVER, RANDALL W.
20   MERK, GREGORY HAND, GEORGE
     PEREIRA, DONALD F. DOWARD,
21   MARIANN BYERWALTER, WILLIAM A.
     HASLER, ROBERT G. HOLMES, GERALD
22   B. SMITH, DONALD R. STEPHENS,
     MICHAEL W. WILSEY and JEFF LYONS,

23
24                         Defendants.

25
26                 **CLASS ACTION COMPLAINT**

27
28

CLASS ACTION COMPLAINT



Plaintiff Vinayak R. Pai Defined Benefits Pension Plan ("Plaintiff"), on behalf of itself and all others similarly situated, by and through its undersigned counsel, Bernstein Litowitz Berger & Grossmann LLP, alleges the following based upon knowledge with respect to its own acts, and based upon facts obtained through investigation by its counsel.

## PRELIMINARY STATEMENT

1.     This complaint arises from Defendants' marketing and sale of the Schwab YieldPlus Fund (the "Fund") – a purportedly conservative mutual fund – pursuant to registration statements and prospectuses that contained untrue statements about the Fund's investment portfolio and risk profile.  Described to Plaintiff and other investors as only "marginally" more risky than investing in a cash equivalent, the Fund was supposed to invest in "ultra" short-term, low-risk debt instruments that would not subject it to significant liquidity risks or fluctuations in share price.

2.     Contrary to its publicly-disclosed investment guidelines, Defendants caused the Fund to invest heavily in high-risk, mortgage-backed instruments, including complex illiquid instruments.    Indeed, from March 17, 2005 to March 28, 2008 (the "Class Period") approximately 40% of the Fund's assets were invested in complex mortgage-backed instruments known as Collateralized Mortgage Obligations ("CMOs").

3.     These drastic, undisclosed changes in the Fund's investment profile significantly increased the risk to which Plaintiff and the Class were exposed.  Moreover, those changes directly violated representations in the Fund's Registration Statements and Prospectuses (defined below) regarding the diversity, credit risk and liquidity of the Fund's investments.

4.     In mid-2007, the collapse of the United States mortgage market to which the Fund had tied its fate revealed the risks inherent in the Fund's deviation from its investment guidelines. As the market for the Fund's long-term mortgage-backed securities evaporated, the Fund was forced to sell those securities into an illiquid market, causing Plaintiff and the Class to incur massive losses.

///

///

**JURISDICTION AND VENUE**

5.     The claims asserted herein arise under and pursuant to Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 (15 U.S.C. §§ 77k, 77l(a)(2) and 77o).

6.     This Court has jurisdiction over the subject matter of this action under Section 22 of the Securities Act, 15 U.S.C. § 77v, and 28 U.S.C. § 1331.

7.     Venue is proper in this District pursuant to Section 22 of the Securities Act, 15 U.S.C. § 77v, and 28 U.S.C. § 1391(b), because the defendants maintain an office in this District, the corporate defendants are headquartered in this District, and many of the acts and practices complained of herein occurred in substantial part in this District.

8.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, the internet, and the facilities of the national securities markets.

**PARTIES**

9.     Plaintiff Vinayak R. Pai Defined Benefits Pension Plan ("Plaintiff") purchased approximately 38,039 Select Shares of the Fund between May 16, 2005 and October 10, 2006, at total cost of over $367,000. Those shares were purchased pursuant to the Registration Statement and Prospectus (defined herein), as set forth in the accompanying certification. As a result of the untrue statements in the Registration Statements and Prospectuses, Plaintiff has incurred a loss of more than $54,000, representing approximately 15% of his investment.

10.     The Schwab YieldPlus Fund (the "Fund") is an open-ended mutual fund organized as a Massachusetts business trust registered under the Investment Company Act. The Fund has issued two series of securities: Investor Shares (Ticker: SWYPX) and Select Shares (Ticker: SWYSX). The Investor and Select Shares were issued to investors pursuant to the following series of registration statements filed with the SEC and made effective during the Class Period, which are referred to collectively as the "Registration Statements":

- Registration Statement filed pursuant to Form N-1A on November 14, 2004, and made effective as of November 15, 2004 (the "2004 Registration Statement");

- Registration Statement filed pursuant to Form N-1A on November 14, 2005, and made effective as of November 15, 2005 (the "2005 Registration Statement");

- Registration Statement filed pursuant to Form N-1A on November 14, 2006, and made effective as of November 15, 2006 (the "2006 Registration Statement");

- Registration Statement filed pursuant to Form N-1A on November 14, 2007, and made effective as of November 15, 2007 (the "2007 Registration Statement"); and

The Investor and Select Shares of the Fund were marketed and sold to investors pursuant to the following series of prospectuses, which were supplemented periodically and which are referred to collectively herein as the "Prospectuses":

- Prospectus dated November 15, 2004 (the "2004 Prospectus");

- Prospectus dated November 15, 2005 (the "2005 Prospectus");

- Prospectus dated November 15, 2006 (the "2006 Prospectus"); and

- Prospectus dated November 15, 2007 (the "2007 Prospectus").

11.     Defendant Charles Schwab Investment Management, Inc. ("Schwab Management") has its headquarters at 101 Montgomery Street, San Francisco, California 94104. Schwab Management is the investment advisor to the Fund and, as such, oversees the management and administration of the Fund and acts as a control person of the Fund. As compensation for these services, Schwab Management receives a management fee from the Fund.

12.     Defendant Charles Schwab & Co. Inc. ("Schwab") is headquartered at 101 Montgomery Street, San Francisco, California 94104. Schwab is the parent company of Schwab Investments. Pursuant to a Distribution Agreement, Schwab was the principal underwriter during the Class Period for shares of the Fund and is the agent for the purpose of the continuous offering of the Fund's shares.

13.     Defendant The Charles Schwab Corporation ("Schwab Corp.") is headquartered at 101 Montgomery Street, San Francisco, California 94104. Schwab Corp. is the parent company of Schwab and Schwab Investments. Schwab Corp. is a control person of Schwab and Schwab Management, its wholly owned subsidiaries, and Charles Schwab Investment, Inc.

14.     Defendant Schwab Investments ("Schwab Investments") was the registrant and issuer of the Fund's shares. Schwab Investments has its headquarters at 101 Montgomery Street, San Francisco, California 94104. Schwab Investments was organized under Massachusetts law on October 26, 1990.

15.     Defendant Charles R. Schwab ("Charles Schwab") is Chairman and Trustee of Schwab Investments and the Funds. Charles Schwab signed or authorized the signing of the false and misleading Registration Statements. As a result of his ownership of and interests in the Charles Schwab Corporation, Mr. Schwab is a controlling person of Schwab and Schwab Management.

16.     Defendant Evelyn Dilsaver ("Dilsaver") was President and Chief Executive Officer of the Fund and signed the 2004 Registration Statement, 2005 Registration Statement and 2006 Registration Statement.

17.     Defendant Randall W. Merk ("Merk") was a Trustee and then President and Chief Executive Officer of the Fund subsequent to Defendant Dilsaver's departure from Schwab. Defendant Merk signed the 2005 Registration Statement, 2006 Registration Statement and 2007 Registration Statement.

18.     Defendant George Pereira ("Pereira") has been Chief Financial Officer and Treasurer of the Fund and signed the 2005 Registration Statement, 2006 Registration Statement and 2007 Registration Statement.

19.     Defendant Gregory Hand ("Hand") was Acting Treasurer and Principal Financial Officer of the Fund and signed the 2004 Registration Statement.

20.     Defendant Mariann Byerwalter ("Byerwalter") is a Trustee who signed the Registration Statements.

21.     Defendant Donald F. Doward ("Doward") is a Trustee who signed the Registration Statements.

22.     Defendant William A. Hasler ("Hasler") is a Trustee who signed the Registration Statements.

1      23.     Defendant Robert G. Holmes ("Holmes") is a Trustee who signed the Registration

2   Statements.

3      24.     Defendant Gerald B. Smith ("Smith") is a Trustee who signed the Registration

4   Statements.

5      25.     Defendant Donald R. Stephens ("Stephens") is a Trustee who signed the

6   Registration Statements.

7      26.     Defendant Michael W. Wilsey ("Wilsey") is a Trustee who signed the

8   Registration Statements.

9      27.     Defendant Jeff Lyons ("Lyons") was a Trustee who signed the 2004 Registration

10   Statement.

11      28.     The Defendants referenced above in paragraphs 15-27 are collectively referred to

12   herein as the "Individual Defendants."

13                          **SUBSTANTIVE ALLEGATIONS**

14      29.     In 1999, Schwab and Schwab Management established the Fund as a purportedly

15   safe alternative to money market funds with higher yields.   Throughout the Class Period,

16   Defendants marketed the Fund through the Prospectuses as an "ultrashort bond fund" designed to

17   invest primarily in investment grade bonds with a duration of one year or less.

18      30.     The Fund's basic strategy – as described by the Prospectus – was to achieve high

19   income returns while avoiding the risks of interest rate fluctuations, illiquidity or share price

20   fluctuations by focusing the Fund's portfolio in very short-term, highly rated, fixed-income

21   securities.   The Prospectuses touted the Fund's short duration strategy as "maintain[ing] an

22   average portfolio duration of *one year or less*" in order to "maintain price share stability and

23   preserve investor capital."

24      31.     Contrary to the Fund's investment guidelines, Schwab Management shifted the

25   Fund's assets into longer-duration bonds, including extensive investments in high-risk mortgage

26   backed securities and similar investments.   Mortgage backed securities posed a particular risk to

27   the Fund by drastically increasing exposure to the very interest rate risk that the Fund's

28   investment strategy purported to minimize.   While rising interest rates may cause the value of

highly-rated corporate or government bonds to decrease, such rate changes generally do not increase the risk that the bonds would default. In contrast, instruments backed by residential mortgages – and by subprime mortgages in particular – face a significantly heightened risk of default from interest rate spikes. Focusing on mortgage-backed securities also heightened the Fund's concentration risk by eroding the diversity of its investments, in violation of its investing guidelines.

32.   By November 30, 2005, 23.2% of the Fund's approximately $6.1 billion in net assets were invested in mortgage backed securities. By November 30, 2006, the Fund's investments in high-risk mortgage backed securities ballooned to constitute 34.2% of the Fund's $9.7 billion of net assets.

33.   By deviating from the Fund's investment guidelines into higher-risk investments, the Fund's performance improved markedly. In 2005, the Fund achieved returns of 3.4%, significantly surpassing the Lehman Brothers Aggregate Bond Index which achieved a return of 2.4%. Furthermore, the Fund's 2005 returns outpaced the average approximate 2.5% return of the 115 other ultrashort bond funds within the Morningstar ultrashort bond fund category. In 2006, the Fund achieved returns of 5.6% and 5.5% for the Select and Investor Shares, respectively, while, the Lehman Brothers Aggregate Bond Index achieved a return of 4.3%. Meanwhile, the Fund's 2006 returns beat the average approximate 4.7% return of the 115 other ultrashort bond funds within the Morningstar ultrashort bond fund category.

34.   The strikingly improved performance achieved by abandoning the Fund's conservative investment guidelines succeeded in attracting new investors to the Fund. This growth began to occur in mid-to late 2005 when investors, attracted to a fund proclaiming itself to limiting fluctuations in share price but able to generate much higher returns, poured investments into the Fund. By April 30, 2005, the Fund surpassed $5.5 billion in assets to became one of the largest ultra-short term bond funds. In fact in May 2005, Lipper and Morningstar, mutual fund industry analysts, named the Fund as the best performer in its class.

35.   In March 2007, the Fund was awarded a Lipper Performance Achievement Certificate for 2006.   Schwab Management attributed the Fund's success to their research acumen, rather than increased – and undisclosed –risks that the Fund had assumed:

> To be No. 1, you have to do everything well and capitalize in all areas — trading, credit analysis and portfolio management – not just outperform in one aspect... Our overall performance might receive the attention, but we're especially pleased with our risk-adjusted performance.   That is what's important to our investors. We don't seek to hit homeruns, but we aim for a lot of singles and the occasional double.   These funds have great long-term records because of consistent out performance, little by little, every month.

36.   By May 31, 2007, the Fund's assets reached over $13 billion.

37.   Defendants did not disclose that the Fund's success resulted from a shift into higher-risk mortgage backed investments that significantly increased the Fund's risk profile, in violation of its investment guidelines.   To the contrary, throughout the Class Period, Defendants continued to market the Fund through untrue statements in the Prospectuses that described a strategy of investing in short-duration bonds that were only marginally more risky than investing in cash equivalents.   Yet those Prospectuses conceded that the risk to the Fund "is greater when the fund holds bonds with longer maturities."

38.   By May 31, 2007, 47% of the Fund's $13.3 billion in assets were invested in mortgage backed securities.   The overwhelming majority of those mortgage backed securities – 38% of the Fund's assets – were held in the form of CMOs, complex instruments comprised of pools of mortgage-backed securities, which are illiquid.   By November 30, 2007, investments in CMOs grew to 40% of the Fund's assets.

39.   The following chart demonstrates how the percentage of the Fund's assets invested in illiquid CMOs progressively increased during the Class Period:

| Net Assets as of: | Net Assets (in thousands) | Net Assets Invested in CMOs (in thousands) | % of Net Assets Invested in CMOs |
|---|---|---|---|
| 11/30/2004 | $4,555,561 | $307,213 | 6.74% |
| 11/30/2005 | $6,140,832 | $1,131,116 | 18.42% |
| 11/30/2006 | $9,687,744 | $2,833,799 | 29.25% |
| 5/31/2007 | $13,277,983 | $5,045,698 | 38% |
| 11/30/2007 | $8,026,701 | $3,172,982 | 39.53% |

40.     The Fund's dependence for its success on heavy investments in mortgage-backed securities, including those backed by subprime mortgages, tied the Fund's fate to that of the mortgage market.  The collapse of that market revealed to Plaintiff and the Class the extent to which the Fund had deviated from its investment guidelines and exposed investors to high-risk instruments that soon proved illiquid.

41.     Specifically, in the first quarter of 2007, major mortgage lenders announced striking increases in the default rates for subprime loans.  These defaults forced many subprime mortgage lenders into bankruptcy, and caused the value for securities backed by subprime and other mortgages to plummet.

42.     Beginning in late 2007 and accelerating through the first quarter of 2008, the Fund took massive write-downs as it marked the value of its mortgage-backed investments down to their reduced market values.  Those write-downs caused a commensurate decline in the Fund's Net Asset Value ("NAV"), which in turn caused investors to abandon the Fund.  According to a letter posted on Schwab's website on March 20, 2008, the Fund's assets had declined to approximately $2.5 billion as of March 20, 2008, from a high of over $13.0 billion as of May 30, 2007.

43.     Defendants did not disclose that the Fund's rapid decline was the result of risky investments made in violation of the Fund's investment guidelines.  Instead, in November 2007, Schwab, in an e-mail response to the Plaintiff's query as to the reason for the decline of the Fund's NAV, stated that the decline was due to a "wholesale downward repricing of the mortgage and asset backed sectors by Interactive Data Corp., the independent pricing agency."

44.     On March 20, 2008, Schwab Management released a statement blaming "market pessimism and forced selling of bonds by institutional leveraged investors" as "two of the reasons why the fixed income market continues to suffer."   That statement also reported that between "June 29, 2007, and March 20, 2008, approximately $0.60 of the $1.91-per share decline in NAV" of the Fund represented "unrealized losses."  Schwab Management did not disclose that the Fund's precipitous decline resulted from its abandonment of the investment strategy touted in the Prospectuses.

45.     In fact, the harm to Plaintiff and the Class did not result from market conditions endemic to bond mutual funds in general, or to short-duration bond funds in particular. The devastation wrought by the Fund's venture into high-risk investments did not impact the Fund's peers, which, having avoided long-term mortgage-backed securities in accordance with their profile as short-term bond funds, continued to generate positive returns even as market for mortgage-backed securities collapsed.  For example, whereas the Fund was ranked by Morningstar in the top 25% within the ultrashort bond fund category for 2006, for 2007, its ranking fell to the bottom 25% based on the returns of -1.04% and -1.24% for the Select and Investor Shares, respectively. The Fund's performance continued to decline in 2008, with year-to-date returns as of March 31, 2008, of -19.8% and -19.9% for the Select and Investor Shares, respectively.

46.     Meanwhile, the Fund's peers within the Morningstar ultrashort bond funds category faired much better achieving average returns of 2.57% for 2007 and -1.47% for 2008 as of March 31. Furthermore, the Lehman Brothers Aggregate Bond Index posted returns of 7.0% for 2007 and 2.2% for 2008 as of March 31.

## UNTRUE STATEMENTS AND OMISSIONS

47.     The Registration Statements and Prospectuses used throughout the Class Period to register and offer Select and Investor Shares of the Fund to Plaintiff and the Class contained untrue statements of material facts and omitted material facts necessary to make the statements therein not misleading. While the four Prospectuses issued during the Class Period, identified in ¶10, *supra*, were not identical, they did contain many of the same untrue statements and were rendered misleading by the same omissions.

48.     Specifically, all of the Registration Statements and Prospectuses stated that "the fund seeks to maintain an average portfolio duration of one year or less" in order to "maintain share price stability and preserve investor capital."[1]

---

[1] The 2004 and 2005 Prospectuses stated that, through this strategy, the Fund sought to maintain a "high degree" of share price stability.

49.     Each of the Prospectuses also explicitly incorporated by reference a Statement of Additional Information and the Fund's Annual Report for that year, each of which provided investors with additional guidance about, *inter alia*, the Fund's investment strategies and limitations.  The Statements of Additional Information and Annual Reports incorporated in the Prospectuses were part of the Prospectuses, and contained additional untrue statements of material facts and omitted material facts necessary to make the statements therein not misleading.

50.     The Statements of Additional Information listed numerous limitations on the Fund, including limitations on the Fund's ability to invest in a given industry and ability to invest in illiquid instruments.   Specifically, the Statements of Additional Information stated that the Fund could not

> Purchase securities (other than securities issued or guaranteed by the U.S. government, its agencies or instrumentalities) if, as a result of such purchase, 25% or more of the value of its total assets would be invested in any industry or group of industries (except that each fund may purchase securities to the extent that its index is also so concentrated).

51.     The Statements of Additional Information in fact reiterated that restriction, stating separately that the Fund could not "Concentrate investments in a particular industry or group of industries, as concentration is defined under the 1940 Act, or the rules or regulations thereunder, as such statute, rules and regulations may be amended from time to time." To explain the term "Concentration", the Statements of Additional Information further stated: "Concentration. The SEC has presently defined concentration as investing 25% or more of an investment company's net assets in an industry or group of industries, with certain exceptions."

52.     The Statements of Additional Information also stated that the Fund could not "Invest more than 15% of its net assets in illiquid securities."  This statement was untrue or misleading because, in fact, the Fund's investments in illiquid securities such as CMOs represented more than 15% of its assets during the Class Period, with CMOs constituting 40% of the Fund's portfolio in November 2007.

53.     The Annual Reports reiterated the Fund's investment objectives and guidelines, and touted the Fund's performance.  For example, the 2005 Annual Report, incorporated in the 2005 Prospectus, included a message from Charles Schwab which stated "I'm especially pleased to highlight the strong performance of Schwab YieldPlus Fund which has placed in the top ten in its category since inception.  With a target duration of just under a year, this fund is designed for your longer-term cash holdings."   The 2005 Annual Report also included a message from Defendant Dilsaver, President and CEO of Schwab Management, which credited the success of the Fund with generating additional investments:   "Lead [*sic*] by the popularity of Schwab YieldPlus Fund, our bond fund assets have grown to over $9 billion as of the close of the report period."

54.     The 2005 Annual Report also touted the Fund's performance without explaining that such performance was achieved by violating the Fund's guidelines and restrictions on illiquid investments and investment concentrations, as discussed above.  The Annual Report stated:

> SCHWAB YIELDPLUS FUND was positioned for continued economic expansion and performed very well, with both share classes of the fund beating both the benchmark and category-average. The fund's emphasis on medium to higher quality corporate bonds helped performance in an environment in which the spreads between the low and high quality bonds remained narrow. The portfolio also carried a sizable investment in floating rate securities and in asset-backed securities, particularly home equity loans. During the report period, we took steps to reduce our exposure to lower quality investments, including those in the corporate and asset-backed sectors. We took this step because we believed that the incremental reward offered by higher risk securities did not compensate for the added risk.

55.     Similarly, the 2006 Annual Report stated:

> The Schwab YieldPlus Fund Investor Shares returned 4.64%, beating its benchmark, the Lehman Brothers U.S. Short Treasury: 9–12 months, which was up 3.72% for the one-year period. The Fund was positioned for continued economic expansion and performed very well, with both share classes of the Fund beating the benchmark and category average. The Fund emphasized investments in higher-quality corporate bonds issued by companies that were expected to outperform during an economic recovery and

held a smaller weighting in government securities. The Fund was generally positioned to manage against interest rate increases by maintaining sizable positions in floating-rate securities and staying close to the short end of its duration range. During the period, the Fund reduced its exposure to lower quality investments, including those in the corporate and asset-backed sectors. This step was taken because the incremental reward offered by higher risk securities did not compensate for the added risk.

## THE FUND'S TRUE CONDITION IS REVEALED

56.     In late July of 2007, the Fund's NAV began to decrease, reflecting the diminution in the value of the Fund's assets. From a Class Period-high of $9.89 per share, the NAV steadily declined to just $8.75 at the beginning of March 2008, and then plunged to a low of $7.28 per share as of March 28, 2008. This decline reflected a loss in the Fund's value of over $2.55 per share since May 2007. From March 28 through April 11, 2008, the Fund's NAV per share plunged further declining to $6.80, reflecting a loss in the Fund's value of approximately $3.03 per share since May 2007.

57.     Schwab Management has yet to acknowledge its responsibility for directing the Fund's investments into risky, long-duration mortgage-backed instruments that caused the losses incurred by Plaintiff and the Class, and instead have sought to place the blame elsewhere. For example, in a March 20, 2008 letter to investors, Schwab Management stated "market pessimism and forced selling of bonds by institutional leveraged investors are two of the reasons that the fixed income market continues to suffer." That letter continued to tout the Fund to investors by stating "YieldPlus invests in a diversified group of securities across a broad ranges of sectors and industries." Furthermore, a subsequent letter sent to investors on March 10, 2008, stated "Even though YieldPlus is a highly diversified fund, it reflects the declines we have seen in non-Treasury securities, including mortgage-backed and asset-backed securities, where reduced demand has been the primary driver of decreasing valuations."

58.     Even as Schwab Management deflected responsibility for the Fund's losses and tried to reassure investors, other Schwab mutual funds were pulling their investments from the Fund. Indeed, a Management Letter posted on the Fund's website on April 1, 2008 stated that, as of that day, other Schwab funds had liquidated all of their holdings in the Fund and no longer

1  held any of its shares. That letter continued to deflect responsibility for the Fund's losses, stating

2  "In recent weeks, market pessimism and forced selling of bonds by institutional leveraged

3  investors are two of the reasons that the fixed income market continues to suffer."

## CLASS ACTION ALLEGATIONS

5  59.  Plaintiff brings this action as a class action pursuant to Federal Rule of Civil

6  Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons or entities who acquired

7  shares of the Fund traceable to the Registration Statements and Prospectuses and who were

8  damaged thereby (the "Class"). Excluded from the Class are Defendants, the Officers and

9  Directors of the Company, at all relevant times, members of their immediate families and their

10 legal representatives, heirs, successors or assigns and any entity in which Defendants have or had

11 a controlling interest.

12 60.  The members of the Class are so numerous that joinder of all members if

13 impracticable. While the exact number of Class members is unknown to Plaintiff at this time

14 and can only be ascertained through appropriate discovery, Plaintiff believes that there are

15 hundreds of members in the proposed Class. Record owners and other members of the Class

16 may be identified from records maintained by Registrant or its transfer agent and may be notified

17 of the pendency of this action by mail, using the form of notice similar to that customarily used

18 in securities class actions.

19 61.  Plaintiff's claims are typical of the claims of the members of the Class as all

20 members of the Class are similarly affected by Defendants' wrongful conduct in violation of

21 federal law that is complained of herein.

22 62.  Plaintiff will fairly and adequately protect the interests of the members of the

23 Class and has retained counsel competent and experienced in class and securities litigation.

24 63.  Common questions of law and fact exist as to all members of the Class and

25 predominate over any questions solely affecting individual members of the Class. Among the

26 questions of law and fact common to the Class are:

27 • whether the Securities Act was violated by the Defendants' acts as alleged;

28

- whether statements made by the Defendants to the investing public in the Registration Statements and Prospectuses misrepresented material facts about the business, operations and management of the Fund; and

- to what extent the members of the Class have sustained damages and the proper measure of damages.

64.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to redress individually the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## COUNT I

### VIOLATIONS OF SECTION 11 OF THE SECURITIES ACT AGAINST ALL DEFENDANTS

65.     Plaintiff repeats and incorporates each allegation set forth above.

66.     This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k against all Defendants.

67.     The Registration Statements for the Fund contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and/or omitted to state material facts required to be stated therein.

68.     The Defendants named herein were responsible for the contents and dissemination of the Registration Statements.  The Individual Defendants each signed some or all of the Registration Statements.

69.     None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material fact and were not misleading.

70.     By reasons of the conduct herein alleged, each Defendant violated Section 11 of the Securities Act.

71.   Plaintiff acquired the Fund's shares pursuant to the Registration Statements in effect at the time of his purchases of those shares.

72.   Plaintiff and the Class have sustained damages.  The value of the Fund's shares has declined substantially subsequent to and due to the Defendants' violations.

73.   At the time of their purchases of the Fund's shares, Plaintiff and other members of the Class were without knowledge of the facts concerning the untrue statements or omissions herein and could not have reasonably discovered those facts prior to July 2007.   Less than three years have elapsed between the time that the securities upon which this Count is brought were offered to the public and the time Plaintiff filed this complaint.

## COUNT II

### VIOLATIONS OF SECTION 12(a)(2) OF THE 1933 ACT AGAINST DEFENDANTS SCHWAB, SCHWAB CORP., SCHWAB MANAGEMENT AND SCHWAB INVESTMENTS

74.   Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein. This Count is asserted against Schwab, Schwab Corp., Schwab Investments and Schwab Management (the "Section 12 Defendants").

75.   The Section 12 Defendants offered and sold a security, namely shares of the Fund's common stock, by means of Prospectuses that contained untrue statements of material facts and omitted to state material facts necessary in order to make the statements, in light of the circumstances under which they were made, not misleading. The Section 12 Defendants actively solicited the sale of the Fund's shares pursuant to the Prospectuses.

76.   Plaintiffs did not know that the Prospectuses contained untrue statements of material facts and did not know the above described material facts that were not disclosed.

77.   The Section 12 Defendants are further liable to Plaintiff and Class members pursuant to Section 12(a)(2) of the Securities Act, as sellers of the Fund's shares.

78.   As a result of the matters set forth herein, pursuant to Section 12(a)(2) of the Securities Act, Plaintiff and Class members are entitled to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if they no longer own such shares.

79.     Plaintiff and putative Class members who do not opt out, hereby tender their shares in the Funds.

## COUNT III

### VIOLATIONS OF SECTION 15 OF THE 1933 ACT
### AGAINST DEFENDANTS SCHWAB,
### SCHWAB CORP. AND THE INDIVIDUAL DEFENDANTS

80.     Plaintiff repeats and incorporates each allegation set forth above.

81.     This Count is brought pursuant to Section 15 of the Securities Act against Defendants Schwab Corp., Schwab and the Individual Defendants.

82.     Each of the Individual Defendants was a control person of one or more of the Defendant Schwab entities named herein by virtue of his or her position as trustee and/or senior officer of the Fund and/or one or more of the Defendant Schwab entities.  Schwab and Schwab Corp. were control persons of Schwab Investments and Schwab Management.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

1.     Determining that this action is a proper class action and certifying Plaintiff as Class representative under Rule 23 of the Federal Rules of Civil Procedure;

2.     Awarding compensatory damages in favor of Plaintiff and the other Class members against all the Defendants, jointly and severally, for all damages sustained as a result of the Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

3.     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

/ / /

/ / /

/ / /

/ / /

/ / /

4.      Awarding recessionary damages; and

5.      Such equitable, injunctive or other relief as deemed appropriate by the Court.

Dated: April 21, 2008                    Respectfully submitted,

BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP

BLAIR A. NICHOLAS

BLAIR A.NICHOLAS
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel:    (858) 793-0070
Fax:    (858) 793-0323

*Counsel to Vinayak R. Pai Defined Benefits Pension
Plan and Proposed Lead Counsel to the Class*

## CERTIFICATION OF VINAYAK R. PAI
## IN SUPPORT OF CLASS ACTION COMPLAINT OF
## VINAYAK R. PAI DEFINED BENEFITS PENSION PLAN

Vinayak R. Pai, hereby declares under penalty of perjury, as follows:

1.      My name is Vinayak R. Pai.  I am sole beneficiary of the Vinayak R. Pai Defined Benefits Pension Plan, plaintiff in the foregoing class action.  I make this Certification in support of the Class Action Complaint filed by the Vinayak R. Pai Defined Benefits Pension Plan.

2.      I have reviewed the Class Action Complaint and authorized its filing.

3.      I did not engage in transactions in the securities which are the subject of the action at the direction of plaintiff's counsel or in order to participate in this or any other litigation under the securities laws of the United States.

4.      I am willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

5.      Vinayak R. Pai Defined Benefits Pension Plan and I have made no transactions during the class period in the debt or equity securities that are the subject of this action except those set forth in the Certificate.

6.      I have not, within the three years preceding the date of the certification, sought to serve or served as a representative party on behalf of a class in an action involving alleged violations of the federal securities laws, except as set forth in the certificate.

7.      Vinayak R. Pai Defined Benefits Pension Plan and I will not accept any payment for serving as representative on behalf of a class beyond the party's pro rata share of any recovery, unless ordered or approved by the Court pursuant to section 27(a)(4) of the Securities Act, 15 U.S.C. § 77z-1(a)(4), or section 21D(a)(4) of the Securities Exchange Act, 15 U.S.C. § 78u-4(a)(4).

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 21 day of April, 2008.

_____
VINAYAK R. PAI

**VINAYAK R. PAI DEFINED BENEFITS PENSION PLAN**
**TRANSACTIONS IN THE SCHWAB YIELDPLUS FUND**

| Date | Trans | Units | Price | Amount |
|---|---|---|---|---|
| 05/16/06 | Buy | 18,097.208 | 9.67 | $175,000.00 |
| 05/31/06 | Buy | 6,686.198 | 9.66 | $ 64,588.67 |
| 08/25/06 | Buy | 8,659.007 | 9.66 | $ 83,646.01 |
| 10/10/06 | Buy | 4,596.583 | 9.67 | $ 44,448.96 |
|  |  |  |  |  |
| 07/20/06 | Sell | (4,038.000) | 9.66 | $ (39,007.08) |
| 09/07/06 | Sell | (1,500.000) | 9.67 | $ (14,505.00) |
| 06/14/07 | Sell | (5,000.000) | 9.68 | $ (48,400.00) |
| 07/16/07 | Sell | (6,500.000) | 9.66 | $ (62,790.00) |
| 08/01/07 | Sell | (935.000) | 9.61 | $  (8,985.35) |
| 11/12/07 | Sell | (544.000) | 9.38 | $  (5,102.72) |